CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 0 2 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff )<br>v. )<br>)<br>VICTOR PINEDA-SANTANA, )  By:<br>)<br>Defendant ) | Civil Action No. 7:07cr030<br><br>Michael F. Urbanski<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION

### I. Background

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

### II. Facts

A Superseding Indictment filed on May 17, 2007 charged defendant Victor Pineda-Santana ("Pineda-Santana") in Counts One and Twelve. Count One charged Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, and specifically alleged that from a time unknown until on or about April 6, 2007, within the Western District of Virginia, Pineda-Santana knowingly and willfully combined, conspired, confederated, and agreed, with persons known and unknown to distribute and possess with intent to distribute a mixture or substance containing more than five hundred (500) grams of methamphetamine in violation of 21 U.S.C. § 846. Count Twelve, upon conviction of one or more of the felony offenses alleged in the indictment, forfeits any property constituting or derived from, any proceeds the defendants obtained, directly or indirectly as a result of such violation; any of the property of the defendants

that was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and any firearms and ammunition involved in the commission of the offense, or possessed in violation thereof pursuant to 21 U.S.C § 853 and 18 U.S.C. § 924(d). Count Twelve specifically forfeits not less than $1,000,000.00 in United States currency and all interest and proceeds traceable thereto, for which the defendants are jointly and severally liable, in that such sum in aggregate was obtained directly or indirectly as a result of violations of 21 U.S.C. 841 and/or 846, or is traceable to such property.

On September 27, 2007, the undersigned conducted a plea hearing. At that hearing, Pineda-Santana, accompanied by his counsel, Neil Johnson and Michael R. Friedman, entered a plea of guilty to Count One of the Indictment and agreed to the forfeiture provisions in Count Twelve. Pineda-Santana plead not guilty to all charges on June 1, 2007, and appeared on September 27, 2007 to change his plea from not guilty to guilty as to Count One. At the hearing, Pineda-Santana, through an interpreter, acknowledged that he had signed a written Plea Agreement reflecting his guilty plea, identified the Plea Agreement at the hearing, and stated that he agreed to all of its terms.

At the September 27, 2007 hearing, defendant was placed under oath and testified that his name is Victor Pineda-Santana. Pineda-Santana stated that he was fully aware of the nature of the charges against him, the elements of the offenses, and the consequences of pleading guilty to Count One. Pineda-Santana was plainly able to understand and communicate with the court and his counsel through an interpreter.[1] At all times, Pineda-Santana appropriately responded to

---

[1] Although Pineda-Santana stated that he was unable to read or write English and that he understood very little English when spoken to, he did state that he could fully understand the proceedings through the interpreter.

2

inquiries from the court and exhibited a full understanding of the proceedings and the instructions given to him by counsel in court. Pineda-Santana stated that he had not been diagnosed or treated for any mental or emotional problem which would affect his ability to communicate or understand the proceedings. Pineda-Santana further testified that he was not under the influence of any alcohol, drug or medication that affected his ability to understand the nature of the proceedings being held, the nature of the charges against him or the consequences of pleading guilty to those charges. Pineda-Santana further stated that he did not suffer from any condition that impeded or prevented his being able to understand the words that were being spoken or the proceedings in general. He was advised that if at any time he failed to understand, he could stop the proceedings and seek clarification. Pineda-Santana's counsel, Mr. Friedman, expressed his opinion that Pineda-Santana was capable of entering a knowing, voluntary and intelligent plea.

Pineda-Santana testified that he had received a copy of the Indictment pending against him and that he had discussed the Indictment and the case with his counsel. After being informed of the provisions of Fed. R. Cr. P. 11(c), Pineda-Santana stated that he was pleading guilty because he was, in fact, guilty of Count One as charged. Pineda-Santana testified that he was pleading guilty of his own free will and had not been forced, threatened, or coerced in any respect. Pineda-Santana stated that no assurances or promises had been made to him by anyone in an effort to induce his plea in this case, except to the extent set forth in the written Plea Agreement filed with the court.

Mr. Friedman testified that he provided Pineda-Santana with a full copy of the Plea Agreement, translated in Spanish, and read each page of the Plea Agreement to Pineda-Santana

3

in Spanish. Pineda-Santana testified that he had read Plea Agreement in its entirety, and he had discussed its terms with his counsel before signing it. Pineda-Santana stated that he understood the terms of the Plea Agreement, and that the document presented to the court set forth his agreement with the government in its entirety.

Pineda-Santana stated that he understood that the agreement included provisions requiring that he provide financial disclosure, waiving any right to collaterally attack his sentence, waiving his right to any direct appeal concerning the application of the sentencing guidelines to his case, waiving claims or interests in witness fees, forfeiting rights to any contraband seized, waiving access to information under the Freedom of Information Act and waiving his right to assert any statute of limitations defense to any count which might be reinstated in the event the agreement is withdrawn or not consummated.

Pineda-Santana further acknowledged that the presiding court is not required to accept the agreement and may reject or defer acceptance of the plea agreement, including any recommendation for sentencing, until after a presentence report is prepared and reviewed.

Pineda-Santana stated that he understood that the offense with which he is charged is a felony, and that, if his plea is accepted, he will be adjudged guilty of a felony offense by the presiding court and this adjudication may deprive him of valuable civil rights, such as the right to vote, hold public office, serve on a jury and possess a firearm.

Pineda-Santana was informed of the maximum possible penalty provided by law for the offenses with which he is charged and said he understood the penalties and consequences of the plea. Specifically, Pineda-Santana was informed that he was subject to a maximum term of imprisonment up to life with a ten (10) year mandatory minimum sentence, a fine of up to

4

$4 million, a $100 special assessment and a term of supervised release following any term of imprisonment.

Pineda-Santana was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued sentencing guidelines for judges to follow in determining the sentence in a criminal case which are advisory. See United States v. Booker, 543 U.S. 220 (2005) (holding that provisions of the Sentencing Reform Act making them mandatory are constitutionally invalid and excising such provisions from the Act thereby making the sentencing guidelines merely advisory). Pineda-Santana acknowledged that he and his counsel had discussed how the sentencing guidelines might apply in his case, and he stated his understanding that the court would not be able to determine the recommended guideline sentence of his case until after a presentence report has been completed and both parties have an opportunity to challenge the reported facts and the application of the guidelines. Pineda-Santana stated that he understood that the eventual sentence imposed may be different from any estimate his attorney has given him, and that the court has the authority, in some circumstances, to depart from the advisory guidelines and impose a sentence that is more or less severe than the sentence called for by the advisory guidelines. Pineda-Santana acknowledged that he understood that the court is not bound by any recommendations set forth in the Plea Agreement, and may sentence him up to the statutory maximum. Pineda-Santana stated that he understood that in that event he would not be able to withdraw his guilty plea. Pineda-Santana acknowledged that he understood that parole had been abolished in the federal system, and, in the event he receives a sentence of incarceration, he will not be released on parole. Pineda-Santana also stated that he understood that any term of supervised release could be revoked if he violated the terms and conditions of

such release, and said that he understood that if supervised release is revoked, an additional term of imprisonment could be imposed regardless of how long he may have served before the violation. Pineda-Santana was advised that if resentenced following a supervised release violation, he may serve a combined total period of incarceration greater than the maximum term he had been told he could receive.

Pineda-Santana also testified that he understood that he had certain rights guaranteed by the Constitution that would be waived if the court accepted the guilty plea. Specifically, Pineda-Santana understood that he was waiving:

1. The right to a speedy and public trial by a jury;

2. The right to plead not guilty to any offense charged against him;

3. The right at trial to be presumed innocent and to require the government to prove his guilt beyond a reasonable doubt;

4. The right to assistance of counsel;

5. The right to see, hear and cross-examine government witnesses;

6. The right to present evidence and witnesses to testify in his own behalf and to the issuance of subpoenas and compulsory processes to compel the attendance of witnesses;

7. The right to remain silent or to testify in his own defense;

8. The right to a unanimous guilty verdict; and

9. The right to appeal a guilty verdict.

Having all of this explained to him, Pineda-Santana stated that he understood the possible consequences of a Guilty Plea and asked the court to accept his plea of guilty to Count One in the

6

Indictment. Pineda-Santana's counsel stated that he believed that his client's plea of guilty was well-advised and consistent with the facts of the case.

The government proffered, without objection, the following evidence regarding the offenses with which Pineda-Santana is charged:

Co-defendant Rogelio Lopez-Sanchez ("Lopez-Sanchez") agreed to cooperate with federal agents after being found in possession of three (3) pounds of methamphetamine during a traffic stop on April 5, 2007. Lopez-Sanchez had 2.5 pounds of methamphetamine delivered to him from co-defendant Enrique Sardinetas-Sanchez ("Sardinetas-Sanchez"). Lopez-Sanchez set a meeting for April 9, 2007 to pay Sardinetas-Sanchez for the 2.5 pounds of methamphetamine. Agents recorded a number of phone calls between Sardinetas-Sanchez about the time, place, and reason for this meeting, which affirmed that Sardinetas-Sanchez intended to collect payment for the methamphetamine at the meeting. Sardinetas-Sanchez traveled from North Carolina to Galax, Virginia on the agreed upon meeting date in a car driven by Pineda-Santana.

After agents observed Pineda-Santana and Sardinetas-Sanchez arrive at the location of the meeting, they were detained by police officers and agents and informed of their Miranda rights, which both of them waived. Sardinetas-Sanchez stated that they were traveling from North Carolina to Galax to collect money for the drug debt and that Pineda-Santana was involved on the money side of the drug business. Pineda-Santana told officers that he traveled from North Carolina to Galax with Sardinetas-Sanchez to collect money owed from a drug debt.

Neither Pineda-Santana nor his counsel offered any material disagreement with the facts set forth in the government's proffer, and Pineda-Santana testified that he and Sardinetas-Sanchez traveled from North Carolina to Galax, Virginia to collect money owed from a previous

7

delivery of drugs. Pineda-Santana further testified that he knew the drugs as "hielo," ice in Spanish, or methamphetamine and that he agreed with Sardinetas-Sanchez to commit acts in furtherance of a conspiracy to distribute methamphetamine.

## *III. PROPOSED FINDINGS OF FACT*

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. Pineda-Santana is fully competent and capable of entering an informed plea;

2. Pineda-Santana is aware of the nature of the charges and the consequences of his plea;

3. Pineda-Santana knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which Pineda-Santana is pleading guilty.

## *VI. RECOMMENDED DISPOSITION*

Based upon the above findings of fact, the undersigned **RECOMMENDS** that the presiding District Court accept Victor Pineda-Santana's plea of guilty to Count One of the Indictment and adjudge him guilty of the offense charged therein, order a presentence investigation, and set a date for Pineda-Santana's sentencing.

## NOTICE TO PARTIES

The Clerk is directed to immediately transmit the record in this case to the Hon. Glen E. Conrad, United States District Judge. Both sides are **NOTIFIED** that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation

within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record.

Enter this 1st day of October, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge